IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| ARTIS WHITEHEAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 06-1153-T-An |
| | ) | |
| OFFICER BURCHETTE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Artis Whitehead, an inmate at the Hardeman County Correctional Facility ("HCCF"), has filed a pro se complaint under 42 U.S.C. § 1983 against Defendants HCCF Mail Room Officers Burchett, Watson, and Flint, and Assistant Warden Blair. Plaintiff contends that Defendants apply the prison mail policy in a racially discriminatory fashion which prevents his receiving certain novels and magazines. The parties have filed cross-motions for summary judgment. For the reasons set forth below, Plaintiff's motion [DE# 24] is DENIED, and Defendants' motion [DE# 22] is GRANTED.

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. To prevail on a motion for summary judgment, the moving party has the burden of showing the "absence of a genuine issue of material fact as to an essential element of the nonmovant's case." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The

moving party may support the motion with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The opposing party may not rest upon the pleadings but, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

"If the defendant . . . moves for summary judgment . . . based on the lack of proof of a material fact, . . . [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. Anderson, 477 U.S. at 249. Rather, "[t]he inquiry on a summary judgment motion . . . is . . . 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" Street, 886 F.2d at 1479 (quoting Anderson, 477 U.S. at 251-52). Doubts as to the existence of a genuine issue for trial are resolved against the moving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970).

Defendants have presented the following unrefuted facts in support of their motion.[1]

---

[1] The "evidence" that Plaintiff has presented in support of his motion and in response to Defendants' motion is unsworn and unauthenticated and, therefore, cannot be considered. See Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 191 (5th Cir. 1991) (A non-moving party cannot avoid summary judgment by trying to create a material issue of fact through inadmissible evidence. (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 n. 19 (1970)). See also U.S. v. Glass Nursing & Convalescent Homes, Inc., 550 F. Supp. 1149, 1154 (S.D. Ohio 1982); Inmates, Washington Cty. Jail v. England, 516 F. Supp. 132, 138 (E.D. Tenn. 1980), aff'd, 659 F.2d 1081 (6th Cir. 1981).

See Defendants' Statement of Undisputed Facts, Attachment 10 to Defendants' Motion for Summary Judgment.  Plaintiff, who is black, is an inmate in the custody of the Tennessee Department of Correction ("TDOC") and is incarcerated at the Hardeman County Correctional Facility, which is operated by Corrections Corporation of America. Defendant Dwayne Blair was an assistant warden at HCCF; Defendant Jimmie Burchette was the mailroom supervisor; and Defendants Rachel Flint and Kathy Watson were mailroom clerks.

TDOC Policy 507.02, adopted as HCCF Policy 16-101, governs the procedure for the collection, distribution, and inspection of mail.  This policy prohibits inmates from receiving any item of mail that could reasonably present a threat to the security, order, or institutional programs of the facility.  It also prohibits inmates from receiving any "sexually explicit material or material which features nudity which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity." "Sexually explicit" is defined as "any depiction of actual or simulated sexual acts including sexual intercourse, oral sex, or masturbation, or material which promotes itself based upon such depictions on a routine or regular basis or in individual one-time issues."  In addition, "nudity" is defined as "any depiction where genitalia or female breasts are exposed."

Pursuant to this policy, the mailroom staff is supposed to inspect and read each individual piece of mail and to examine each page of magazines and other publications addressed to an inmate. With regard to books, the mailroom staff is supposed to scan the text of the book and review any summary of the book's contents located on the back or book-jacket of the book. Pursuant to policy and procedure, the mailroom staff treats each

individual piece of mail as an independent event regardless of whether any prior material from similar sources or authors has previously been found to be in compliance with TDOC Policy 507.02.  In addition, an inmate is prohibited from receiving a particular issue of a magazine, publication, or other item of mail when any portion of that item violates the policy.

After reviewing the incoming mail, the mailroom staff forwards any mail suspected of being in violation of TDOC Policy 507.02 to Assistant Warden Blair or the security threat group coordinator. If, upon further review, the item is found to violate TDOC policy, then the item is rejected, and the mailroom staff provides a notice of rejection to the addressee inmate. The notice of rejection provides the inmate with the name and address of the sender of the rejected mail, the date it was received, and the specific reason why the mail was rejected. In addition, the notice of rejection informs the inmate that he has the right to appeal the rejection.

In accordance with these policies and procedure, Defendants reviewed the mail addressed to Plaintiff that was received in the mailroom on August 25, 2005; September 20, 2005; and April 3, 2006.  Defendants determined that each item of mail received on those dates violated TDOC Policy 507.02.  Specifically, Defendants determined that the mail received on August 25, 2005, contained nudity which could pose a threat to the security, order, and discipline of the HCCF facility. Defendants then provided Plaintiff with a notification of the rejection of his mail and the asserted reason for the rejection.  On August 26, 2005, Plaintiff signed the notification of rejection of incoming mail form indicating that he wanted to have the rejected mail thrown away.

Defendants also reviewed the mail received on September 20, 2005, and determined that it contained sexually explicit material which could pose a threat to the security, order, and discipline of the facility. Defendants provided Plaintiff with a notification of the rejection of his mail, and these items were returned to the sender on September 30, 2005.

Finally, Defendants reviewed the mail received on April 3, 2006, and determined that it contained sexually explicit material which could pose a threat to the security, order, and discipline of the HCCF facility. In addition, Defendants determined that the mail "contained materials specifically found to be detrimental to prisoner rehabilitation because it would encourage deviate sexual behavior." Defendants provided a notification of the rejection to Plaintiff, and these items were returned to the sender on May 10, 2006.

While prisoners retain the protections provided by the Constitution, the Supreme Court has held that prisoners retain only "those First Amendment rights that are not inconsistent with [their] status as [prisoners] or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Although receiving mail from an outside source is such a First Amendment right, id., courts are not to substitute their own judgment on administrative matters for that of prison officials, even when First Amendment claims have been made. See Thornburgh v. Abbott, 490 U.S. 401, 408 (U.S. 1989); see also O'Lone v. Estate of Shabazz, 482 U.S. 342,353 (1987). When a prisoner alleges that a regulation or the actions of prison officials have impinged on his constitutional rights, a court must focus on whether the regulation or action at issue was reasonably related to a legitimate penological interest. Turner v. Safely, 482 U.S. 78, 89 (1987).

The Supreme Court has identified several factors relevant to whether a prison regulation is reasonably related to legitimate penological interests. First, "there must be a valid, rational connection between the legitimate, neutral government interest and the prison regulation, so that the policy is not "arbitrary or irrational." Id. at 89. Second, a court must determine "whether there are alternative means of exercising the [asserted Constitutional] right that remain open to prison inmates" Id. at 90. A court should also consider the impact that an accommodation of the asserted constitutional right will have on guards, other inmates, and on the allocation of prison resources generally. Id. Finally, the court should look to the presence of obvious, easy alternatives to the regulation as evidence that the regulation is not reasonable but, instead, an exaggerated response to prison concerns. Id. at 91. The Turner factors apply to any regulation or action of a prison official that affects the sending of an item of mail or other publication to an inmate. Thornburgh, 490 U.S. at 414.

In the present case, the court finds that TDOC Policy 507.02 is rationally related to the legitimate penological interests of maintaining and protecting institutional safety and security and promoting the rehabilitation of inmates. Safety and maintaining order and control of a prison facility are legitimate penological interests. Thornburgh, 490 U.S. at 415 (quoting Pell, 417 U.S. at 417). See also Washington v. Harper, 494 U.S. 210, 225 (1990) ("[P]rison administrators not only have an interest in ensuring the safety of prison staffs and administrative personnel, but also the duty to take reasonable measures for the prisoner's own safety.")

In asserting that a regulation or official action is rationally related to a valid

6

penological interest such as safety and security, prison officials need not show that prohibited materials actually resulted in past problems in the institution or that such materials are likely to pose any such problem in the future. Rogers v. Martin, 2003 WL 23095558 (6th Cir.) (relying on Mauro v. Arpaio, 188 F.3d 1054 (9th Cir. 1999)). Instead, Defendants must show only that they reasonably thought that the policy would advance these interests. Mauro, 188 F.3d at 1060.

TDOC Policy 507.02 prohibits inmates from receiving any "sexually explicit material or material which features nudity which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity." The policy was deemed necessary due because sexually explicit material and material depicting nudity have the potential to encourage an inmate to commit an assault on another inmate or a guard. In addition, such materials can create a sexually charged environment in a prison facility. See Defendants' Statement of Undisputed Facts. Furthermore, this policy promotes order and maintains a proper work environment by preventing sexual harassment, both verbal and physical, of female guards and administrative employees by the male inmates incarcerated at HCCF. See Jones v. Salt Lake County, 503 F.3d 1147 (10th Cir. 1007) ("'[T]here is no doubt that protecting the safety of guards in general is a legitimate interest, and that reducing sexual harassment in particular ... is legitimate.' The ban is rationally related to these objectives." (quoting Mauro v. Arpaio, 188 F.3d 1054, 1059 (9th Cir. 1999))).

In addition, TDOC Policy 507.02 is rationally related to the legitimate penological interest of promoting the rehabilitation of prisoners incarcerated at HCCF. Just as this policy

7

serves the interests of maintaining safety and security in the institution by discouraging violent physical and sexual assaults by inmate, it also serves as a reasonable measure to protect the inmates from themselves. Washington, 494 U.S. 225. Sexually explicit material has the potential to be detrimental to the rehabilitation of prisoners by encouraging them to engage in deviate sexual behavior. TDOC Policy 507.02 furthers the rehabilitative efforts and programs of HCCF by assuring that inmates will not be subjected to any potential roadblock to their rehabilitation through content that could potentially derail their progress. See Thompson v. Campbell, 2003 WL 22782321 (6th Cir.) ("While, on this record, we have no reason to believe that Mr. Thompson will rise up against his jailors or engage in deviant sexual conduct should he possess such materials, we cannot discount the possibility that other more volatile prisoners will.")

The second factor in determining if the regulation is reasonably related to a legitimate penological interest is "whether there are alternate means for the inmate to exercise the asserted Constitutional right." Turner, 482 U.S. at 90.  In analyzing this factor, a court "should be particularly conscious of the 'measure of judicial deference owed to corrections officials…in gauging the validity of the regulation'" Id. (citing Pell, 417 U.S. at 827).  Here, Plaintiff has other available alternatives to exercise his rights.  Plaintiff may receive other publications of a sexual nature as long as each item complies with TDOC policy.

Plaintiff argues that an alternative to Defendants' application of the TDOC Policy 507.02 exists by removing any portion of a publication that is in violation of the policy and allowing the inmate to receive the remaining portions of the publication. However,

Defendants have presented evidence that, due to the high volume of mail handled by the HCCF mailroom, requiring the mailroom to scan and remove articles, photographs, or other portions of a particular book or magazine that violate TDOC policy in order to preserve the non-offending portion would be unduly burdensome on the allocation of resources by prison administrators.  See Turner, 482 U.S. 90-91.

Finally, "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests," then the regulation may not satisfy the reasonable relationship standard.  Id. at 90.  However, it is Plaintiff's burden to show that such an accommodation exists at a de minimis cost. Plaintiff has not met this burden and, thus there is no evidence that the regulation represents an "exaggerated response to the problem at hand."

Plaintiff additionally complains that Assistant Warden Blair initialed the rejection notices rather than signing them and did not personally review the rejected mail.  Plaintiff's complains are without merit.  Assistant Warden Blair's affidavit states that he reviewed suspect items of mail in accordance with TDOC and HCCF policy.  Blair Affidavit at para. 8.  Plaintiff has not refuted this affidavit.  Assuming that Plaintiff is correct that Assistant Warden Blair's initialed the notices rather than signing them, Plaintiff has failed to show how this violated his constitutional rights.

Plaintiff also argues that Defendants' policies and procedures are overbroad.  Rather than impose a blanket ban on all publications containing sexual material, Defendants have prohibited the receipt of only those publications that run afoul of TDOC Policy 507.02.

9

>As explained in Willson v. Buss, 370 F. Supp.2d 782, 785 (N.D. Ind. 2005),
>
>>When it is all said and done, there is a wide variety of constitutionally protected actions, processes and rights that exist in open society that may not be permissible in the prison setting. The limitations on these rights are buffered by the expansive bundle of discretion that exists for prison administrators under Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Necessarily, that bundle of discretion creates some but certainly not unlimited administrative discretion. This is routinely described in cases involving prison authorities. It seems beyond dispute that these First Amendment rights must be evaluated and examined under the Turner context. It also speaks to the function of the United States judiciary, and particularly United States district courts, in becoming involved in the micro-management of these kinds of issues in state prisons. It seems the best policy to defer to the expertise of prison administrators unless the constitutional right is clearly established in the prison context.

Accordingly, Defendants are entitled to summary judgment on the issue of whether the TDOC policy and procedures at issue violate his constitutional rights.

Plaintiff also alleges that Defendants violated his equal protection rights under the Fourteenth Amendment by applying a higher level of scrutiny to his mail because of his race. Plaintiff contends that "European-American (white)" inmates are permitted to have sexually explicit material that has been withheld from him. Plaintiff also contends that sexually explicit movies have been shown to the general inmate population. However, Plaintiff has pointed to no evidence in the record to support these allegations. In response, Defendants have submitted their own affidavits which state that they did not take any action against Plaintiff based on his race or color or the race or color of any author, character, or person depicted in any item of mail but, instead, acted in good faith and pursuant to TDOC policy.

To state an equal protection claim, a plaintiff must establish that the defendants

intentionally and purposefully discriminated against him because he is member of a protected class, such as a racial class. <u>Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.</u>, 429 U.S. 252, 265 (1977); <u>Henry v. Metropolitan Sewer Dist</u>, 922 F.2d 332, 341 (6th Cir. 1990). In order to show actionable discrimination, Plaintiff must establish that he was treated differently than other inmates who were similarly situated, <u>Buchanan v. City of Bolivar</u>, 99 F.3d 1352, 1360 (6th Cir. 1996), and that a racially discriminatory intent or purpose was a factor in the decision of the prison officials to treat him in a discriminatory manner. <u>Village of Arlington Heights</u>, 429 U.S. at 265-66. Because Plaintiff has not presented any evidence to show that Defendants treated him differently than other similarly situated inmates because of his race, as opposed to unsubstantiated allegations, Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

Consequently, Plaintiff's motion for summary judgment is DENIED, and Defendants' motion for summary judgment is GRANTED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE